**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| Jose Alberto Rios Lopez and Jesus Rios Lopez, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>Blue WP, Inc. (d/b/a Graziella's Italian Bistro), WP Burger, Inc. (d/b/a Westchester Burger Company in White Plains, New York), WP Burger II, Inc. (d/b/a Westchester Burger Company in Rye Brook, New York), WP Burger III, Inc. (d/b/a Westchester Burger Company in Mount Kisco, New York), WP Burger V, Inc. (d/b/a Westchester Burger Company in Stamford, Connecticut), Grace DiFeo, Angelo DiFeo, Sandy DiFeo, and Vincent Corso,<br><br>                Defendants. | Case No. _____<br><br><br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs Jose Alberto Rios Lopez and Jesus Rios Lopez (together, "Plaintiffs"),

individually and on behalf of all others similarly situated, through their undersigned attorneys,

for their Class and Collective Action Complaint against Defendants Blue WP, Inc. (d/b/a

Graziella's Italian Bistro), WP Burger, Inc. (d/b/a Westchester Burger Company in White Plains,

New York), WP Burger II, Inc. (d/b/a Westchester Burger Company in Rye Brook, New York),

WP Burger III, Inc. (d/b/a Westchester Burger Company in Mount Kisco, New York), WP

Burger V, Inc. (d/b/a Westchester Burger Company in Stamford, Connecticut), Grace DiFeo,

Angelo DiFeo, Sandy DiFeo, and Vincent Corso (collectively, "Defendants") (individuals are

referred to collectively as "Defendant Family"), upon personal knowledge as to themselves and

upon information and belief on all other matters, allege:

## NATURE OF THE ACTION

1.     This class and collective action arise out of Defendants' repeated disregard of federal and New York State labor laws during Plaintiffs' tenure as employees of Graziella's Italian Bistro ("Graziella's").

2.     Plaintiffs sue on behalf of themselves and similarly situated current and former employees of Defendants under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201, *et seq.*, the New York Labor Law (the "NYLL") Article 6, § 190 *et seq.* and Article 19, § 650 *et seq.*, for failure to pay all wages due including minimum wages, overtime compensation, unlawful retention of gratuities, uniform-related expenses, and spread-of-hours pay, and for violations of recordkeeping requirements.

3.     This action alleges violations that are nearly identical to those made in a class and collective action commenced in 2012 against the Westchester Burger Company locations in Rye Brook and White Plains, and against Angelo DiFeo, in a case captioned *Caroleo v. Westchester Burger Inc. and Angelo Difeo*, No. 12-cv-4351 (S.D.N.Y.).  There, as Plaintiffs seek here, Emanuele Caroleo sought to recover accrued but unpaid wages, minimum wages and/or overtime compensation on behalf of himself and all other wait staff and bus people who worked at Westchester Burger Inc.  *Caroleo* settled approximately three months after the lawsuit commenced, but Defendants have not ceased their unlawful practices and continue to engage in egregious federal and state labor law violations.

4.     Four years later, in 2016, the New York Department of Labor ("DOL") investigated WP Burger, Inc. (d/b/a Westchester Burger Company in White Plains, New York) with respect to one of its employees, Mario Guerrero.  An investigator was assigned to the case,

and Defendant, WP Burger, Inc. ultimately issued Mr. Guerrero a check for $840 for his last week of pay.

5.      The *Caroleo* case and the DOL investigation did not change Defendants' practices of routinely failing to pay their employees all wages that are the subject of this action: minimum wages, overtime compensation, unlawful retention of gratuities, uniform-related expenses and spread-of-hours pay.

6.      Defendants continue to violate federal and New York labor laws.

7.      Plaintiffs were hired as bussers at Graziella's, but throughout their employment, Defendants required them to serve as dishwashers, valet attendants, runners, chefs, janitors and other roles at all the Defendants' locations.

8.       Plaintiffs, who worked an average of 66-70 hours per week, were regularly required to perform many jobs at Graziella's and the Westchester Burger Company locations ("WBC") but were improperly and unfairly compensated at less than the appropriate minimum wage.

9.      Plaintiffs and other tipped employees were regularly compensated by Defendants for tipped work at a rate below the tipped credit minimum wage, but Defendants did not satisfy the strict requirements under the FLSA and NYLL that would allow them to pay a reduced minimum wage and take a "tip credit."

10.      Defendants failed to provide tipped workers with the statutorily required notice they intended to pay tipped workers the "tipped" minimum wage rate.

11.      Defendants maintained a policy and practice whereby Plaintiffs and similarly situated class and collective action members had to spend significant time performing non-tipped work unrelated to their tipped work at both Graziella's and WBC, including (i) cleaning and

3

vacuuming the restaurants; (ii) cleaning the bathrooms; (iii) setting up tables and chairs inside
and outside the dining area; (iv) performing general maintenance around the restaurants; (v)
valeting cars; (vi) painting and landscaping the restaurants; and (vii) changing light bulbs.

12.    Defendants also maintained a policy and practice whereby tipped workers such as
Plaintiffs and the similarly situated class and collective action members were occasionally
required to perform non-tipped work that was wholly unrelated to their work as employees of
Defendants, including landscaping the private homes owned by the Defendant Family.

13.    Plaintiffs and the similarly situated class and collective action members, who,
upon information and belief, include non-tipped workers, were compensated below the
appropriate minimum wage for work they performed.

14.    Plaintiffs and the similarly situated class and collective action members, who,
upon information and belief, include non-tipped workers, frequently worked longer than 10 hour
shifts but did not receive spread-of-hours pay.

15.    Plaintiffs and the similarly situated class and collective action members, who,
upon information and belief, include non-tipped workers, were required to purchase their own
uniforms with their own money.

16.    Defendants did not clean and maintain the uniforms worn by Plaintiffs and the
similarly situated class and collective action members, who, upon information and belief, include
non-tipped workers, but instead required them to pay for the cleaning and maintenance of their
uniforms.

17.    Defendants improperly deducted wages related to breakage of vases and
dinnerware from the pay of Plaintiffs and the similarly situated class and collective action
members, who, upon information and belief, include non-tipped workers.

18.     Defendants generally paid Plaintiffs and the similarly situated class and collective action members, who, upon information and belief, include non-tipped workers, for only 39 hours of work per week, despite the fact that they regularly worked more than 60 hours per week.

19.     Defendants failed to compensate Plaintiffs and the similarly situated class and collective action members, who, upon information and belief, include non-tipped workers, overtime premiums for working over 40 hours per week.

20.     Defendants rarely scheduled or permitted rest or meal breaks, even though meals were deducted from the paychecks of Plaintiffs and the similarly situated class and collective action members, who, upon information and belief, include non-tipped workers.

21.     When business was slow, Defendants sent home Plaintiffs and the similarly situated class and collective action members who, upon information and belief, include non-tipped workers, without paying them tips for the day or wages earned for the hours they worked before being sent home.

22.     Defendants did not require Plaintiffs and similarly situated class and collective action members, who, upon information and belief, include non-tipped workers, to clock in and out, nor did they require workers to sign in and out at the beginning and end of their shifts, nor did they otherwise accurately track and record Plaintiffs' hours.  Accordingly, upon information and belief, Defendants' time records are inaccurate.

23.     The environment at Graziella's and WBC was hostile and abusive because of the Defendant Family's blatant disregard of federal and New York State labor laws.  The Defendant Family regularly yelled at Plaintiffs and the similarly situated class and collective action members for taking breaks, and subjecting them to long hours of work without meals.  The

Defendant Family threatened to fire Plaintiffs and similarly situated class and collective action members if they failed to do what they were told and failed to pay them for work they performed.  In addition, in response to the DOL's investigation in 2016, the Defendant Family warned Plaintiffs and similarly situated class and collective action members not to speak to anyone about their working conditions, or they would be terminated.

24.     Plaintiffs seek damages on their own behalf and on behalf of all others similarly situated, and injunctive relief to ensure that Defendants' pervasive pattern of unlawful conduct does not continue.

## THE PARTIES

**Plaintiffs**

### Jose Alberto Rios Lopez

25.     Jose Alberto Rios Lopez ("Plaintiff Jose") is an adult individual who resides in White Plains, New York.

26.     Plaintiff Jose was employed by Graziella's from 2006 until April 15, 2018.

27.     Plaintiff Jose is a covered employee within the meaning of the FLSA and the NYLL.

### Jesus Rios Lopez

28.     Jesus Rios Lopez ("Plaintiff Jesus") is an adult individual who resides in White Plains, New York.

29.     Jesus was employed by Graziella's from approximately April 2007 until February 2018.  Jesus is a covered employee within the meaning of the FLSA and the NYLL.

**Defendants**

30.     Defendants jointly employed Plaintiffs and similarly-situated employees.

31.     Each Defendant had substantial control over the unlawful policies and practices alleged.

32.     Graziella's and WBC are owned by the Defendant Family, and Defendants' operations are interrelated and unified.

33.     Graziella's and WBC shared common management and were centrally controlled by the same people – Defendant Family.

34.     Defendants applied the same wrongful employment policies, practices, and procedures to all tipped employees at Graziella's and WBC, including with respect to minimum wage, overtime compensation, uniform-related expenses, tips and spread-of-hours pay.

35.     During all times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and NYLL.

**Blue WP, Inc. (d/b/a Graziella's Italian Bistro)**

36.     Blue WP, Inc. is a domestic corporation organized under the laws of the State of New York.  Blue WP, Inc. does business as Graziella's Italian Bistro.

37.     Graziella's is located at 99 Church Street, White Plains, New York 10601.

38.     Graziella's Italian Bistro is the name of the entity printed on Plaintiffs' paychecks.

39.     Upon information and belief, Graziella's had an annual gross volume of sales over $500,000.

**WP Burger, Inc. (d/b/a Westchester Burger Company in White Plains, New York)**

40.     WP Burger, Inc. is a domestic corporation organized under the laws of the State of New York.  WP Burger, Inc. does business as Westchester Burger Company.

41.     The White Plains location of Westchester Burger Company is located at 106

Westchester Avenue, White Plains, New York 10601.

42.     Upon information and belief, the White Plains Westchester Burger Company had an annual gross volume of sales over $500,000.

**WP Burger II, Inc. (d/b/a Westchester Burger Company in Rye Brook, New York)**

43.     WP Burger II, Inc. is a domestic corporation organized under the laws of the State of New York.  WP Burger II, Inc. does business as Westchester Burger Company.

44.     The Rye Brook location of Westchester Burger Company is located at 275 South Ridge Street, Rye Brook, New York 10573.

45.     Upon information and belief, the Rye Brook Westchester Burger Company had an annual gross volume of sales over $500,000.

**WP Burger III, Inc. (d/b/a Westchester Burger Company in Mt. Kisco, New York)**

46.     WP Burger III, Inc. is a domestic corporation organized under the laws of the State of New York.  WP Burger III, Inc. does business as Westchester Burger Company.

47.     The Mt. Kisco location of Westchester Burger Company is located at 353 North Bedford Road, Mt. Kisco, New York 10549.

48.     Upon information and belief, the Mt. Kisco Westchester Burger Company had an annual gross volume of sales over $500,000.

**WP Burger V, Inc. (d/b/a Westchester Burger Company in Stamford, Connecticut)**

49.     WP Burger IV, Inc. is a domestic corporation organized under the laws of the State of New York.  WP Burger IV, Inc. does business as Westchester Burger Company.

50.     The Stamford location of Westchester Burger Company is located at 1980 West Main Street, Stamford, Connecticut 06902.

51.     Upon information and belief, the Stamford Westchester Burger Company had an

annual gross volume of sales over $500,000.

**The Defendant Family**

52.     Grace DiFeo ("Defendant Grace") is the owner of Graziella's.  Upon information and belief, Defendant Grace lives in West Harrison, New York.

53.     Angelo DiFeo ("Defendant Angelo"), Defendant Grace's son, is listed as the Chief Executive Officer of the WBC locations in White Plains and Rye Brook.  Upon information and belief, Defendant Angelo lives in West Harrison, New York.  Defendant Angelo and Vincent Corso ("Defendant Vincent"), Defendant Grace's son-in-law, established WBC. Upon information and belief, Defendant Vincent lives in West Harrison, New York.

54.     Defendant Vincent handles payroll for Graziella's and WBC, and Defendant Angelo distributes tips in cash to Plaintiffs and similarly situated class and collective action members.

55.     Defendant Angelo and Defendant Vincent supervised employees at both WBC and Graziella's.

56.     Sandy DiFeo ("Defendant Sandy"), Defendant Grace's daughter, is the manager of Graziella's.  Defendant Sandy is in charge of making schedules at Graziella's, and also directed the work and assigned work shifts to Plaintiffs and similarly situated class and collective action members at Graziella's.

57.     Both Defendant Grace and Defendant Sandy gave instructions to, and supervised, Plaintiffs and similarly situated class and collective action members at Graziella's.

## DEFENDANTS ARE JOINT EMPLOYERS

58.     Throughout the Class Period (defined below), Defendants exercised sufficient control over Plaintiffs and others similarly situated and were "joint employers" under the FLSA

and the NYLL.

59.    Graziella's and WBC share food, alcohol, and other supplies.  For example, if WBC was having a party and wanted to serve clients a certain type of food that was not on the regular WBC menu, Graziella's would prepare the dish and deliver it to WBC.

60.    Graziella's and WBC also share tablecloths, ice, napkins, and groceries.

61.    Graziella's and WBC also share staff.  Plaintiffs and others similarly situated were regularly required to work at both Graziella's and WBC.  Defendants would tell them where they were needed and instruct them to report to work at another location.

62.    Defendants directed and assigned work at both Graziella's and WBC.

63.    Plaintiffs were also sent to work at homes owned by the Defendant Family.  For example, Plaintiff Jose was sent to plant trees at Defendant Sandy's house, and also performed cleaning work and pet care at Defendant Angelo's house.

64.    Plaintiffs and others similarly situated employees received a portion of their wages via check from Graziella's or WBC and the remainder from Defendant Angelo, in cash.

65.    The Defendant Family closely supervised the work of Plaintiffs and the Class and exercised control over the terms and conditions of their employment, including setting their work schedules and monitoring the performance of their duties through the cameras installed at Graziella's and WBC, which they could access on location or through their phones.

66.    Defendants Angelo, Vincent and Grace exercised the right to hire Plaintiffs, the Collective (defined below) and the Class (defined below).  Defendants also determined the rate of pay for workers.

67.    The Defendant Family had the authority to fire Plaintiffs, the Collective (defined below) and the Class (defined below).

## JURISDICTION AND VENUE

68.    This Court has subject matter jurisdiction over Plaintiffs' federal claims under the

Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), 29 U.S.C. § 216(b), and 28 U.S.C.

§ 1331.

69.    This court has supplemental jurisdiction over Plaintiffs' state law claims pursuant

to 28 U.S.C. § 1367(a).

70.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial

part of the events giving rise to the claims occurred within the Southern District of New York.

## COLLECTIVE ACTION ALLEGATIONS

71.    Plaintiffs bring the First and Second Causes of Action as a collective action

pursuant to Section 216(b) of the FLSA, on behalf of themselves and all similarly situated

current and former tipped and non-tipped workers employed by Graziella's and WBC, which are

owned, operated and controlled by the Defendant Family, for a period of three years prior to the

filing of this Complaint through the date of final judgment in this matter, and who elect to opt-in

to this action (the "Collective").  Excluded from the Collective are the named Defendants, any

other entities affiliated with them and any persons related by blood or marriage to the Defendant

Family.

72.    At all relevant times, Plaintiffs and the Collective have been similarly situated and

have been subjected to Defendants' similar wrongful pay policies.

73.    These wrongful wage and hour policies include but are not limited to: (a)

Defendants' policy and practice of willfully failing and refusing to pay Plaintiffs at the legally

required minimum wage for all hours worked; (b) willfully failing to pay the overtime premium

for work over 40 hours per week; (c) requiring tipped workers to regularly perform non-tipped

work for over two hours, or 20% percent of a shift; and (d) failing to provide proper notice when they would be paid their "tipped" minimum wage rate.

74.     Defendants' unlawful and improper conduct described above, is part of a policy and practice of minimizing labor costs by failing to record the hours that employees work and paying for all work performed.

75.     Defendants' unlawful conduct is pervasive throughout Graziella's and WBC.

76.     The Collective is readily ascertainable through Defendants' records they must create and maintain under federal and state law.

77.     Notice should be sent to the Collective under 29 U.S.C. § 216(b).

## **CLASS ACTION ALLEGATIONS**

78.     Plaintiffs bring the Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Counts, the NYLL claims, under Rule 23, on behalf of themselves and similarly situated current and former tipped and non-tipped employees of Graziella's and WBC (the "Class" or "Class Members"), which are owned, operated, and controlled by the Defendant Family, for six years prior to the filing of this Complaint through the date of final judgment in this matter (the "Class Period").  Excluded from the Class are the named Defendants, any other entities affiliated with them and any persons related by blood or marriage to the Defendant Family.

79.     This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

80.     The Class Members are readily ascertainable and determinable from Defendants' records.  The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable.  For notice, their names and addresses are readily available from Defendants.  Notice can be provided by all means permissible under Rule 23.

81.     The Class is so numerous that joinder of all members is impracticable and the disposition of their claims as a class will benefit the parties and the Court.

82.     The Class was subject to the same wrongful wage practices of Defendants as described in this Complaint:  (a) failing to pay minimum wages; (b) failing to pay overtime; (c) failing to properly distribute tips; (d) failing to pay spread-of-hours pay; (d) failing to pay uniform-related expenses; (e) failing to provide proper wage statements; and (f) failing to provide proper wage and hour notices.

83.     Plaintiffs' claims are typical of the claims of the Class, as they sustained similar damages arising out of Defendants' wrongful conduct, in violation of the NYLL.  The relief sought by Plaintiffs is typical of the relief which could be sought by each Class Member in separate actions.

84.     Plaintiffs and the Class have all been injured because they have been uncompensated or under-compensated due to Defendants' common policies and practices. Defendants benefited from the same unfair and wrongful acts as to each Class Member.

85.     Plaintiffs will fairly and adequately protect the interests of the Class and have no interests that are contrary to or conflict with the Class Members.

86.     Plaintiffs are represented by counsel who are experienced and competent in both class action and employment litigation and have represented many plaintiffs and classes in wage and hour cases.

87.     A class action is superior to other methods for a fair and efficient adjudication of the controversy, particularly in wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  A class action will permit a large number of similarly situated individuals to prosecute their common

13

claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that would occur if there were numerous individual actions.  Since the damages suffered by individual Class Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for Plaintiffs and the Class Members to individually seek redress for the wrongful conduct.  The adjudication of individual litigation claims would cause a great expenditure of Court and public resources, and treating the claims as a class action would result in a significant saving of such costs.  The issues can be decided by means of a common, class-wide proof.  Class litigation is superior because it will obviate the need for unduly duplicative litigation that might cause inconsistent judgments regarding Defendants' practices.

88.     Current employees are often fearful of asserting their employment rights, fearing retaliation or losing their jobs.  Former employees fear bringing claims because doing so can harm their employment and efforts to secure future employment.  Class actions provide class members anonymity, which allow for the vindication of their rights while eliminating or reducing these risks.  Moreover, a class action provides a means for remedying violations throughout a group of workplaces, such as Graziella's and WBC, which have been plagued by persistent and pervasive abuses, as evidenced by the previous lawsuit and DOL investigation.

89.     Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the Class, making appropriate final injunctive relief or corresponding declaratory relief regarding the Class.

90.     Common questions of law and fact exist regarding the Class that predominate over questions only affecting Plaintiffs and the Class Members individually and include, but are not limited to:

a.  whether Defendants violated NYLL and the supporting New York State DOL regulations;

b.  whether Defendants paid Plaintiffs and the Class Members at the proper minimum wage rate for all hours worked;

c.  whether Defendants had a policy or practice of failing to provide adequate notice of payment at a reduced minimum wage to Plaintiffs and the Class;

d.  whether Defendants kept true and accurate time and pay records for all hours worked by their employees, and other records required by the NYLL and the supporting regulations;

e.  whether Defendants have a policy of requiring tipped employees to engage in non-tipped work for over 20% of a shift or over two hours at work;

f.  whether Defendants properly compensated Plaintiff and the Class for hours worked over 40 hours per workweek;

g.  whether Defendants failed to provide Plaintiffs and the Class with spread-of-hours pay when their workday was longer than 10 hours, as required by the NYLL;

h.  whether Defendants misappropriated tips from Plaintiffs and the Class by demanding, handling, pooling, accepting and retaining tips and/or service charges paid by customers intended for Plaintiffs and the Class and which customers reasonably believed were gratuities for Plaintiff and the Class;

i.  whether Defendants distributed a portion of the tips paid by customers to workers who were not entitled to receive tips;

j.  whether Defendants failed to pay Plaintiffs and the Class for uniform-related expenses;

k.  whether Defendants made unlawful deductions from wages paid to Plaintiffs and the Class;

l.  whether Defendant failed to keep true and accurate time and pay records for all hours worked by Plaintiffs and the Class;

m.  whether Defendants failed to timely pay wages to Plaintiffs and the Class in violation of the NYLL;

n.  whether Defendants failed to furnish Plaintiffs and the Class with an accurate statement of wages, hours worked, rates paid, gross wages, and the claimed tip allowance as required by the Wage Theft Prevention Act and NYLL § 195;

and

    o.   the nature and extent of class-wide injury and the measure of damages for those injuries.

## FACTUAL ALLEGATIONS

91.    Graziella's is an Italian restaurant operated and controlled by the Defendant Family.

92.    Defendant Grace is the owner of Graziella's and Defendant Sandy is the manager.

93.    Defendant Angelo and Defendant Vincent co-own WBC and Defendant Vincent is the general manager of the WBC locations.

94.    The Defendant Family would assign and direct Plaintiffs' tasks and duties at Graziella's and WBC, and Plaintiffs were expected to follow those directions.

95.    Plaintiffs began working at Graziella's more than ten years ago and were initially hired as bussers. Defendants, however, often asked Plaintiffs to fill-in for staff when they were absent or because key positions remained unfilled.

96.    Plaintiffs filled in at every position, as needed.  These positions included chef, waiter, host, valet, coat check, janitor, and delivery worker.

97.    Plaintiffs were usually responsible for closing the restaurant.

98.    Generally, Plaintiffs worked from 11 am to 10 pm six days a week.  When there was a special event or a party, they stayed even later.

99.    Plaintiffs were often called in to work at WBC on their days off.

100.    Defendants never gave Plaintiffs any breaks for meals, but until September 2017, Defendants deducted $10 from their paychecks for meals.

101.    If business at Graziella's or WBC was slow, the Defendant Family would send Plaintiffs home after an hour or two of work and not properly pay them for the day.

16

102.     Both the FLSA and the NYLL require that employees be paid a minimum wage.

103.     As waiters and bussers, Plaintiffs were "tipped employees" under the FLSA, which defines a "tipped employee" as an employee "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."

104.     Both the federal and state labor laws provide that tipped employees can receive less than the full minimum wage.  However, under the FLSA, tipped employees must be paid the full minimum wage unless the employer can meet two conditions.  First, the employer must inform employees of the terms of Section 203(m) of the FLSA, including that the employer is paying the employee less than the full minimum wage because their tips are included in their wages and that the employer has not taken any part of the tips from customers.  Second, the employer must actually not have taken any portion of the employees' tips and/or given them to a non-food service worker.

105.     State labor law additionally requires employers to pay a food service worker the full minimum wage and prohibits them from claiming a tip credit on any day the food service worker works in a non-tipped occupation for two hours or more or for more than 20% of his or her shift.

106.     Defendants did not meet the requirements to claim a tip credit.

107.     Defendants did not provide Plaintiffs with proper notification of the tipped minimum wage or tip credit provisions of the FLSA or the NYLL, or their intent to apply a tip credit to their wages.

108.     In the past two to three years, Plaintiffs spent more than two hours, or 20%  of their shifts performing non-tipped work not related to their tipped occupation, including:  (a) stocking and replenishing the bar; (b) making deliveries of food prepared for catered parties; (c)

cleaning and vacuuming the restaurants; (d) cleaning the bathrooms; (e) setting up tables and chairs inside and outside the dining area; (f) performing general maintenance around the restaurants; (g) parking cars; (h) painting and landscaping the restaurants; (i) unloading groceries; and (j) changing light bulbs.

109.    Defendants paid Plaintiffs at a rate less than the New York tipped minimum wage rate when they were performing tipped tasks, and less than the full minimum wage rate when they were performing non-tipped work.

110.    Throughout the duration of their employment at Graziella's and WBC, Plaintiffs received paychecks and cash from Defendants that did not properly record or compensate them for all the hours worked.

111.    Defendants removed hours that Plaintiffs worked from their time records and did not pay them for all time worked.

112.    For example, both Plaintiffs' paystubs indicate 39 hours worked per week at the tipped worker rate, for every week, which is incorrect because they regularly worked more than 60 hours per week.

113.    Plaintiffs should have been compensated at different rates based upon the work they performed.

114.    Plaintiffs' checks reflect that they regularly took breaks during the workday, and they were not paid for that time.  Plaintiffs, however, hardly ever took a break because when they did (or even rested), Defendant Grace and Defendant Sandy would reprimand them.

115.    Both federal and state labor laws also require that employees who work more than 40 hours a week must be paid overtime at the rate of one and one-half times their regular or lawful hourly rate.

116.    Although Plaintiffs regularly worked 20 hours of overtime or more per week, Defendants failed to pay Plaintiffs an overtime premium at one and one-half times the full minimum wage rate for the hours they worked over 40 per work week.

117.    NYLL contains a provision called "spread-of-hours" pay to protect workers from excessively long shifts.  Workers who are on the job, including break times or split shifts, for more than 10 hours a day, must receive an additional hour's pay at the minimum wage for that day.

118.    Plaintiffs regularly worked over 10 hours per day, but Defendants did not pay Plaintiffs spread-of-hours pay.

119.    Defendants required Plaintiffs to wear a uniform consisting of a formal button-down shirt, dress pants, dress shoes, black socks, and ties in specific seasonal colors and designs chosen by the Defendants.

120.    Plaintiffs had to purchase their mandatory uniform.

121.    Since Plaintiffs regularly filled in for other positions, as needed, Plaintiffs' uniforms required constant cleaning.

122.    However, Defendants did not clean and maintain Plaintiffs' mandatory uniform and failed to pay them the required weekly uniform maintenance amount in addition to the required minimum wage.

123.    Defendants did not pay Plaintiffs the gratuities given by customers for private parties, or tips when they were sent home early.

124.    Defendants made improper deductions from Plaintiffs' paychecks and tips from the breakage of vases or dinnerware.

125.     Plaintiffs received a portion of their wages by check, and the remainder in cash.

19

126.    Defendants failed to provide Plaintiffs with accurate statements of wages, hours worked, rates paid, gross wages, or the claimed tip allowance.

<u>COUNT I</u>
**Fair Labor Standards Act – Minimum Wages**
**(Brought on behalf of Plaintiffs and the Collective)**

127.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs.

128.    Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed.

129.    At all times, each of the Defendants has been, and continues to be, an employer within the meaning of the FLSA, 29 U.S.C. § 203.

130.    At all times, each Defendant employed employees, including Plaintiffs and the Collective.

131.    Defendants failed to pay Plaintiffs and the Collective the proper wages to which they were entitled under the FLSA.

132.    Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA because Defendants failed to inform Plaintiffs and the Collective of Subsection 3(m) of the FLSA, 29 CFR 531.59.

133.    Defendants required Plaintiffs and the Collective to fill in for other non-tipped employees, as needed.  In doing so, Defendants failed to compensate Plaintiffs and the Collective at the appropriate non-tipped rate, paying them the same tipped rate regardless of the tasks they were performing.

134.    Defendants required Plaintiffs and the Collective to perform this non-tipped work, which generally took over 20% of their shift.  Defendants compensated Plaintiffs and the

Collective at the tipped minimum wage rate rather than at the full hourly minimum wage rate as required by the FLSA.

135.    The Defendant Family required Plaintiffs and the Collective to perform outside work for them at their homes.  For this extra work, Defendants compensated Plaintiffs and the Collective at a rate well below minimum wage, as required by the FLSA.

136.    Defendants also required Plaintiffs and the Collective to purchase their mandated uniforms.  Deductions for uniforms resulted in Plaintiffs and the Collective being paid less than the full minimum wage and overtime pay rate, in violation of the FLSA.

137.    Defendants' improper conduct was willful and intentional.  Defendants were, or should have been aware, that their described actions were unlawful because of the previous DOL investigation and the *Caroleo* lawsuit.

138.    The three-year statute of limitations under the FLSA applies.

139.    Defendants have not made a good faith effort to comply with the FLSA regarding the compensation of Plaintiffs and the Collective.

140.    Due to Defendants' willful violations of the FLSA, Plaintiffs and the Collective have suffered damages by being denied wages under the FLSA, in amounts to be determined at trial.  Plaintiffs and the Collective are entitled to recover such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation under the FLSA.

**COUNT II**
**Fair Labor Standards Act – Overtime Pay**
**(Brought on behalf of Plaintiffs and the Collective)**

141.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs.

142.    Plaintiffs and the Collective routinely worked over 40 hours per week during the

period.

143.    Defendants willfully failed to pay Plaintiffs and the Collective one and a half times the minimum wage for all work over 40 hours per workweek.

144.    Defendants knew or should have known their described actions were unlawful.

145.    The three-year statute of limitations under the FLSA applies.

146.    Defendants have not made a good faith effort to comply with the FLSA regarding the compensation of Plaintiffs and the Collective.

147.    Due to Defendants' willful violations of the FLSA, Plaintiffs and the Collective have suffered damages by being denied wages under the FLSA in amounts to be determined. Plaintiffs and the Collective may recover such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation under the FLSA.

**COUNT III**
**New York Labor Law – Minimum Wage**
**(Brought on behalf of Plaintiffs and the Class)**

148.    Plaintiffs, on behalf of themselves and the Class, re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs.

149.    Defendants have engaged in a widespread pattern, policy and practice of violating the NYLL, as described herein.

150.    During the Class Period, Plaintiffs and the Class were employees within the meaning of NYLL.

151.    During the Class Period, Defendants were employers, joint employers, agents, or officers of a corporation within the meaning of NYLL.

152.    Defendants failed to pay Plaintiffs and the Class the minimum hourly wages to which they were entitled under the NYLL and supporting regulations.

153.    Defendants required Plaintiffs and the Collective to perform substantial non-tipped work, which generally took over 20% of their shift.  Defendants compensated Plaintiffs and the Class at the tipped minimum wage rate rather than at the full hourly minimum wage rate as required by the NYLL and supporting regulations.

154.    By their intentional failure to pay minimum hourly wages to Plaintiffs and the Class, Defendants have willfully violated the NYLL and the supporting DOL regulations.

155.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the Class have suffered damages by being denied wages under the NYLL in amounts to be determined.  Plaintiffs and the Class may recover their unpaid minimum wages, liquidated damages, prejudgment interest, post-judgment interest, attorneys' fees, costs, and other compensation under the NYLL.

**COUNT IV**
**New York Labor Law – Unpaid Overtime**
**(Brought on behalf of Plaintiffs and the Class)**

156.    Plaintiffs, on behalf of themselves and the Class, re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs.

157.    Defendants failed to pay Plaintiffs and the Class the proper overtime wages, in the amount of one and a half times the full minimum wages for all hours worked over 40 per work week, to which they are entitled under the NYLL and the supporting regulations.

158.    By their intentional failure to pay overtime to Plaintiffs and the Class, Defendants have willfully violated the NYLL and the supporting DOL regulations.

159.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the Class have suffered damages by being denied overtime compensation under the NYLL in amounts to be determined.  Plaintiffs and the Class may recover their unpaid minimum wages, unpaid overtime

compensation, liquidated damages, prejudgment interest, post-judgment interest, attorney fees, costs, and other compensation under the NYLL.

## COUNT V
### New York Labor Law – Spread-of-Hours Pay
### (Brought on behalf of Plaintiffs and the Class)

160.   Plaintiffs, on behalf of themselves and the Class, re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs.

161.   Plaintiffs and the Class routinely worked over 10 hours in a workday.

162.   Defendants willfully failed to compensate Plaintiffs and the Class one hour of additional pay at the basic New York minimum hourly wage rate on days in which the length of their workday was over 10 hours, as required by the NYLL and the supporting DOL regulations.

163.   By their intentional failure to pay spread-of-hours pay to Plaintiffs and the Class, Defendants have willfully violated the NYLL and the supporting DOL regulations.

164.   Due to Defendants' willful violations of the NYLL, Plaintiffs and the Class have suffered damages by being denied spread-of-hours pay under the NYLL in amounts to be determined.  Plaintiffs and the Class may recover their unpaid minimum wages, spread-of-hours pay, liquidated damages, prejudgment interest, post-judgment interest, attorneys' fees, costs, and other compensation under the NYLL.

## COUNT VI
### New York Labor Law – Tip Misappropriation
### (Brought on behalf of Plaintiffs and the Class)

165.   Plaintiffs, on behalf of themselves and the Class, re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs.

166.   Defendants unlawfully retained gratuities earned by Plaintiffs and the Class in violation of NYLL, Article 6 § 196-d and the supporting DOL regulations.

167.     By their intentional retention of gratuities intended for Plaintiffs and the Class, Defendants have willfully violated the NYLL and the supporting DOL regulations.

168.     Due to Defendants' willful violations of the NYLL, Plaintiffs and the Class have suffered damages by being denied unpaid gratuities under the NYLL in amounts to be determined.  Plaintiffs and the Class are entitled to recovery of their unpaid minimum wages, liquidated damages, prejudgment interest, post-judgment interest, attorneys' fees, costs, and other compensation pursuant to the NYLL.

<u>COUNT VII</u>
**New York Labor Law – Uniform Violations**
**(Brought on behalf of Plaintiffs and the Class)**

169.     Plaintiffs, on behalf of themselves and the Class, re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs.

170.     Defendants required Plaintiffs and the Class to wear a uniform consisting of a formal button-down shirt, dress pants, dress shoes, black socks, and ties in specific seasonal colors and designs chosen by the Defendants.

171.     Plaintiffs had to purchase their mandatory uniform.

172.     Since Plaintiffs regularly filled in for other positions, as needed, Plaintiffs' uniforms required constant cleaning.

173.     However, Defendants did not clean and maintain Plaintiffs' mandatory uniform and failed to pay them the required weekly uniform maintenance amount in addition to the required minimum wage.

174.     By their intentional refusal to clean and maintain the required uniforms, Defendants have willfully violated the NYLL and the supporting DOL regulations.

175.     Due to Defendants' willful violations of the NYLL, Plaintiffs and the Class have

suffered damages by being denied the costs for maintaining their uniforms.  Plaintiffs and the Class may recover their unpaid minimum wages, liquidated damages, prejudgment interest, post-judgment interest, attorneys' fees, costs, and other compensation under the NYLL.

## COUNT VIII
### New York Labor Law – Improper Wage Deductions
### (Brought on behalf of Plaintiffs and the Class)

176.    Plaintiffs, on behalf of themselves and the Class, re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs.

177.    Defendants made unlawful deductions from the wages of Plaintiffs and the Class by deducting the cost of meals from the wages given to Plaintiffs and the Class, yet failing to provide such meals to Plaintiffs and the Class, as the term is defined by 12 N.Y.C.R.R. § 146-3.7

178.    Defendants' improper meal deductions violate the NYLL and DOL regulations.

179.    Defendant further made unlawful deductions from the wages of Plaintiffs and the Class under 12 N.Y.C.R.R. § 142-3.11(a) by improperly deducting the costs for breakage of vases and dinnerware.

180.    The deductions Defendants made from Plaintiffs' and the Class' wages were not expressly authorized in writing and were not for the benefit of Plaintiffs and the Class.

181.    By their intentional and unauthorized deductions from the wages of Plaintiff and the Class, Defendants have willfully violated the NYLL, and the supporting DOL regulations.

182.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the Class have suffered damages for the unlawful deductions.  Plaintiffs and the Class may recover their unpaid wages, unauthorized deductions, liquidated damages, prejudgment interest, post-judgment interest, attorneys' fees, costs, and other compensation under the NYLL.

## COUNT IX
### New York Labor Law – Notice and Record-Keeping Requirements
### (Brought on behalf of Plaintiffs and the Class)

183.    Plaintiffs, on behalf of themselves and the Class, re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs.

184.    State law requires Defendants to maintain payroll records.

185.    12 N.Y.C.R.R. § 146-2.1(a) requires employers in the restaurant industry to establish, maintain, and preserve weekly payroll records for at least six years, which show the following for each employee:  (a)  name and address; (b) social security number; (c) occupational classification and wage rate; (d) the number of hours worked daily and weekly, including the time of arrival and departure for each employee working a split shift or spread-of-hours exceeding 10 hours; (e) the amount of gross wages; (f) deductions from gross wages; (g) allowances, if any, claimed as part of the minimum wage; (h) money paid in cash; and (i) student classification.  12 N.Y.C.R.R. § 146-2.1(b) states that "[t]he records should also indicate whether the employee has uniforms laundered, cleaned or maintained by the employer."

186.    12 N.Y.C.R.R. § 146-2.2 requires employers in the restaurant industry to provide each employee, prior to the start of employment, written notice of the employees' regular hourly pay rate, overtime hourly pay rate, the amount of the tip credit, if any, to be taken from the minimum hourly rate, and the regular pay day.  The notice must also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate.  The employer must provide notice both in English and in any other language spoken by the employee as his or her primary language.

187.    Defendants have willfully failed to supply Plaintiffs and the Class with wage notices as required under NYLL.

27

188.    Defendants violated NYLL Article 6 § 195(1) and 12 N.Y.C.R.R. § 146-2.1 by (i) failing to establish, maintain and preserve the payroll records of Plaintiffs and the Class which reflect the above-referenced information during the Class Period, and (ii) failing to notify Plaintiffs and the Class of their rate of pay at the time of hiring.

189.    Due to Defendants' willful violations of the NYLL and DOL regulations, besides ordinary costs, attorneys' costs and fees, Plaintiffs and the Class may have statutory costs of $50 for expenses and liquidated damages equal to 100% of the total wages found to be due.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

A.    An order certifying that the First and Second Counts of this Complaint may be maintained as a collective action under 29 U.S.C. 216(b) and that prompt notice be issued to potential members of the opt-in FLSA Collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims;

B.    An order certifying that the Third through Ninth Counts of this Complaint be maintained as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a Class of former and current tipped and non-tipped employees employed by Defendants in the past six years and that notice of the pendency of this action be provided to the Class Members;

C.    An order designating Plaintiffs as class representatives for both the FLSA and the state law claims and Plaintiffs' attorneys as counsel for both the FLSA Collective and the New York Class;

D.    An order awarding Plaintiffs, the FLSA Collective, and the New York Class unpaid minimum wages, overtime pay, spread-of-hours pay, misappropriated tips, uniform related expenses, unlawful deductions and all other unpaid wages, liquidated damages and

statutory penalties and all other sums of money owed to Plaintiffs and members of the FLSA

Collective and the Class Members, with interest on these amounts;

     E.     An order directing Defendants to identify, locate and restore to all current and

former employees the restitution they are due for unpaid minimum wages, overtime pay, spread-

of-hours pay, misappropriated tips, uniform related expenses, unlawful deductions and all other

unpaid wages, liquidated damages and statutory penalties and all other sums of money, with

interest on these amounts;

     F.     An order imposing all statutory and/or civil penalties provided by law;

     G.     Pre- and post-judgment interest;

     H.     An award of reasonable attorneys' fees as provided by the FLSA and/or other

applicable law;

     I.     For all costs of suits; and

     J.     For such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

     Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by

jury.

Dated: Rye Brook, New York
       December 5, 2018

                            KLAFTER OLSEN & LESSER LLP

                            *Fran L. Rudich*

                            _____
                            Fran L. Rudich
                            Alexis H. Castillo
                            Two International Drive, Suite 350
                            Rye Brook, New York 10573
                            Telephone: (914) 934-9200

Fax: (914) 934-9220
Fran@klafterolsen.com
Alexis.Castillo@klafterolsen.com

MAKE THE ROAD NEW YORK
Sarah Leberstein
46 Waller Avenue
White Plains, New York 10605
Telephone: (914) 948-8466
sarah.leberstein@maketheroadny.org

*Attorneys for Plaintiffs*